

United States Courts
Southern District of Texas
FILED

OCT 0 7 2004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| PERRY ALLEN AUSTIN, | § |
| | § |
| Petitioner, | § |
| | § |
| -VS | §    NO.    04-CV-2387 |
| | § |
| DOUG DRETKE, Director, Texas | § |
| Department of Criminal Justice, | § |
| Institutional Division, | § |
| | § |
| Respondent. | § |

# RESPONSE TO MOTION TO DISMISS

Petitioner, Perry Allen Austin responds pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and other applicable law to respondent's motion to dismiss his habeas petition in this capital case.

## I.   Introduction

This response is set out as follows:

I.    Introduction.................................................................................................1
II.   Respondent's asserted defenses ...............................................................2
III.  The Exhaustion Defense ...........................................................................4
  1   Petitioner is not required to "timely file" to exhaust: timeliness raises an issue of procedural default, not exhaustion ................................................................4
  2   Mr. Austin filed an application in state court that raised his federal claims in identical terms to his federal petition and thereby exhausted those claims .............................4
  3   The Court Of Criminal Appeals *Sua Sponte* Reviewed The Record For Fundamental Error And, As It Considered These Questions On The Merits, These Issues Have Been Exhausted In State Court. .........................................................................6
IV.   The Independent and Adequate State Ground Defense ...................................7
  1   Overview..................................................................................................7
  2   The rule applied is not adequate to bar federal relief because it is not "firmly established

and regularly applied", in fact, the rule is a novel rule that was announced" for the first time in Mr. Austin's case and then applied to him with savage effect....................................................7

3    The rule applied to Mr. Austin is inconsistent with the words of the statute and is therefore novel and cannot bar federal merits review............................................................34

4    Mr. Austin did not violate the state procedural rule as he showed good cause for his untimely filing and was defaulted only as a result of the state court's finding, flying in the face of the record, that he had "offered no explanation" for his untimely filing.............................35

5    The Texas rule deeming a federal competency claim waived by the failure of a prisoner to timely raise the claim even though he is incompetent at the time of the purported waiver is unconstitutional and cannot default Mr. Austin's federal claims.............................................38

6    The Texas rule on its face and as applied violates the Due Process clause of the constitution in as much as it allows an incompetent prisoner to be tried, convicted and sentenced to death and then, while still incompetent, "waive" his right to have any state or federal court remedy the fact that he was tried, convicted and sentenced to death when incompetent. ..............................................................................................................................39

7    The rule applied to Mr. Austin is not adequate as it creates a discretion as to whether to consider or dismiss a petitioner's federal claims....................................................................40

8    The rule applied to Mr. Austin is not adequate in this case because of its exorbitant application to Mr. Austin.................................................................................................................41

9    The rule applied to Mr. Austin is not adequate as it is manifestly unfair in treatment of his claim.............................................................................................................................................42

10    The rule applied to Mr. Austin is not adequate as it purports to waive a right that is unwaivable as a matter of federal constitutional law or where the waiver is not adequate for those purposes.................................................................................................................................43

11    The rule applied to Mr. Austin is not adequate because it fails to protect a legitimate state interest in the case of suicidal, mentally ill prisoners .......................................................44

12    The rule applied to Mr. Austin is not independent because it relied upon questions of federal law, particularly as to waiver.....................................................................................45

13    Mr. Austin's default should be excused because he is able to demonstrate cause and prejudice, particularly given his severe mental illness and the coercive conditions of his confinement, which have exacerbated that illness.................................................................46

14    Mr. Austin's default should be excused because a failure to consider his claims will result in a fundamental miscarriage of justice.........................................................................47

V.    Mr. Austin requires and is entitled to a hearing and evidentiary development in relation to his    47

VI.    Conclusion ................................................................................................................48

## II.    Respondent's asserted defenses

The Respondent in its motions has raised two defenses in the alternative.

> The state court's rejection of Austin's motion to file an out-of-time original application for state habeas relief for failure to comply with the state statute of limitations *either* means that Austin has failed to exhaust his claims by timely filing them in state court, *or*

that the state court effectively dismissed Austin's petition on independent and adequate state grounds.

*Respondent's Second Motion to Dismiss*, p.4-5 (emphasis in original).

As discussed below, Respondent's exhaustion defense appears to be based upon three assertions: that Mr. Austin has not exhausted because his post-conviction claims were not "timely filed"; that Mr. Austin has never filed an application in state court, and; that Mr. Austin filed no brief and therefore raised no claims on direct appeal. *Respondent's Second Motion to Dismiss*, pp 4-5.

Respondent's defense that Mr. Austin's application was dismissed on independent and adequate state grounds rests upon the state court's dismissal for failure to comply with the statute of limitations. *Respondent's Second Motion to Dismiss*, p.6.

Mr. Austin filed an application for post-conviction relief in the state court raising his federal claims in identical terms to those presented in his petition to this Court. Mr. Austin's claims were dismissed as procedurally defaulted, thus exhausting Mr. Austin's claims. In addition, a number of Mr. Austin's claims had previously been considered and relief denied by the Texas Court of Criminal Appeals at direct appeal, thus exhausting those claims.

The timing rule under which Mr. Austin was defaulted is a new rule announced by the Texas Court of Criminal Appeals in an unpublished opinion in Mr. Austin's case and is not adequate to default Mr. Austin's federal claims. The rule requiring a showing of good cause to excuse an untimely filing has not been fairly or consistently applied and so is not adequate to default Mr. Austin's federal claims. Neither rule can meet the federal requirement that it be 'firmly established and regularly followed' in order to support the dismissal of a federal claim.

## III.   The Exhaustion Defense

## 1  Petitioner is not required to "timely file" to exhaust: timeliness raises an issue of procedural default, not exhaustion

The Texas Court of Criminal Appeals dismissed Mr. Austin's federal claims on the basis that his petition had been untimely filed under that Court's newly announced rule and that in its view good cause had not been shown for the untimely filing.  *Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (unpublished)  The claims filed in state court and rejected by the state's highest court were literally identical to the claims contained in Mr. Austin's federal petition.

It is clear that a federal petitioner who has defaulted his claims in state court due to untimely filing has exhausted those claims.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) citing 28 U. S. C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125-126, n. 28 (1982).  *Coleman* itself was a case in which the petitioner had untimely filed his state collateral appeal and was found to have exhausted his claims before the state's highest court even though he had presented them out of time and they were, for that reason, dismissed.

## 2  Mr. Austin filed an application in state court that raised his federal claims in identical terms to his federal petition and thereby exhausted those claims

Respondent in its Second Motion to Dismiss incorrectly claims, "Austin has filed *no* application for state habeas relief". (*Respondent's Second Motion to Dismiss*, p.5).  This is a misstatement of the procedural history of this case.

The Court of Criminal Appeals, by its order of May 26, 2004, while holding that any filing by Mr. Austin would be untimely, specifically held that Mr. Austin was entitled to make such a filing and that it would be considered pursuant to Article 11.071 § 4, 4A. *Ex Parte Perry*

*Allen Austin*, No. 74,372 (Tex. Crim. App. May 26, 2004) (unpublished).[1]

On June 21, 2004 Mr. Austin filed an original application for writ of habeas corpus in the convicting court; the 339th Judicial District Court of Harris County, Texas.

Acknowledging the binding force of the Court of Criminal Appeal's order of May 26, 2004, Mr. Austin had included in his writ application an explanation for his untimely finding and why good cause should be found to have been shown.[2] *Application For Writ of Habeas Corpus*, p.5.

On June 29, 2004 pursuant to Article 11.071 § 4(d)(2) the convicting court entered findings of fact and recommended that good cause be found to have been shown without the need to reach Mr. Austin's explanations of good cause for the untimely filing. The Court then forwarded Mr. Austin's application and its order finding good cause to have been shown to the Court of Criminal Appeals.

On July 6, 2004, the Court of Criminal Appeals found that good cause had not been shown for the untimely filing and, as required by Article 11.071 §4A(b)(1) dismissed Mr. Austin's application.

In dismissing the application, the Court of Criminal Appeals made a specific finding of fact that *Mr. Austin had filed an* application and that, but for its new rule, that application would have been timely filed. *Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (unpublished). ("An application was filed in the trial court in what would have been a statutorily proper time if the statutory times had been calculated from the date counsel was appointed.")[3]

---

[1]   Documents appearing in the record below are not exhibited as it is anticipated that they will be filed with the Court by the State.

[2] This explanation was clearly labeled in a section titled *Procedural Issues: This court should be satisfied that good cause is shown for the untimely filing of this brief.*

[3]   Pursuant to  § 11.071 (4) Texas courts will accept an untimely petition for filing and review the application to determine whether the statutory exceptions of § 11.071(4A) are met. Given this level of judicial review such a petition is unquestionably properly filed for the purposes of § 2244. See *Hall v. Cain*, 216 F.3d 518, 520 (5th Cir.

In these circumstances, Respondent's contention that Mr. Austin's procedural history discloses that, "Austin has filed *no* application for state habeas relief" is wholly unsustainable. This is not a case in which the court has exercised its power to decline to accept the filing of an application. Rather, the application was filed and then dismissed for a failure to comply with the procedural requirements applicable under state law.

## 3   The Court Of Criminal Appeals *Sua Sponte* Reviewed The Record For Fundamental Error And, As It Considered These Questions On The Merits: These Issues Have Been Exhausted In State Court

The requirement of exhaustion is rooted in the principle of comity. The federal courts should not upset a state court conviction until the state courts have had an opportunity to correct a constitutional violation. *Darr* v. *Burford*, 339 U.S. 200, 204 (1950).

The Court of Criminal Appeals did not rely upon any failure to raise a claim upon direct appeal to default claims of fundamental error, rather, it reached the merits on questions of fundamental error and so no procedural bar is applicable. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) (where the last state court to consider a matter reaches the merits it removes any bar to federal-court review that might otherwise have been available.) *See also Rice v. Marshall*, 816 F.2d 1126, 1129 (6th Cir. 1987) (federal *habeas* review not precluded because state courts chose not to enforce procedural rule and ruled on merits of petitioner's federal claim); *Tokar v. Bowersox*, 198 F.3d 1039 (8th Cir. 1999) (federal habeas review not precluded because, although

---

2000) (finding petitions involving repetitive claims to be "'properly filed' in accordance with Louisiana law because a Louisiana state habeas court would have to review them to discern whether they actually were repetitive and thus not subject to review"); *Dilworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding a successive petition to be properly filed because the application "was accorded some level of judicial review"); *Smith v. Ward*, 209 F.3d 383, 385 (5th Cir. 2000) (finding a successive petition to be properly filed as Louisiana would consider the merits of the application if it fits within narrowly defined exceptions); *Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (finding a successive petition to be properly filed because the Texas courts "will accept the petition for filing and review the application to determine whether the statutory exceptions are met").

petitioner's failure to raise specific claim of ineffective assistance of counsel in his motion for state post-conviction relief constituted procedural default under state law, state supreme court addressed issue); *Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001)

## IV.    The Independent and Adequate State Ground Defense

## 1    Overview

The Court of Criminal Appeals dismissed Mr. Austin's initial habeas petition on the basis that the petition was untimely filed and that Mr. Austin had failed to show good cause for his failure to timely file.

There were, in effect, two rules applied to default Mr. Austin's claims in state court. First, the Court of Criminal Appeals applied a new rule for calculating time under the statute in order to rule that Mr. Austin's state petition was untimely filed.  Second, the Court of Criminal Appeals purported to apply the rule expressed in §11.071 (4A) in finding that Mr. Austin had failed to show good cause for the late filing of his habeas petition and thereafter dismissed the petition.

In order to reach this conclusion the Court of Criminal Appeals was forced to invent a new rule, inconsistent with its own previous practice, and then apply it with unheralded severity to Mr. Austin, disregarding Mr. Austin's submissions on the matter and relying upon a constitutionally insupportable set of waivers purportedly executed in the trial court.

As will often be the case where a state rule fails to provide and independent and adequate basis for dismissal of federal claims, a number of overlapping exceptions to the defense advanced by Respondent are present in this case.

## 2   The rule applied is not adequate to bar federal relief because it is not "firmly established and regularly applied", in fact, the rule is a novel rule that was announced" for the first time in Mr. Austin's case and then applied to

**him with savage effect**

#### (a) The CCA barred Mr. Austin's claims using a new rule, stated for the first time in his case

The rule that time runs under §11.071(4) from the date of waiver of counsel, rather than

the date of appointment of counsel, is a new rule, stated for the first time in Mr. Austin's case. It

has never been announced and came as a complete surprise to all involved. Such a rule cannot

bar federal review.

While the federal courts have long recognized the state's right to make a procedural rule

regarding the filing of appellate claims, "the sufficiency of such a rule to limit all review of a

constitutional claim itself depends upon the timely exercise of the local power to set procedure."

*Ford v. Georgia*, 498 U.S. 411, 423 (1991)  (A state procedural bar must have been firmly

established and regularly followed by the time as of which it is to be applied in order for it to be

valid in a given case.)  New procedural requirements will not act as a bar to federal review, even

when the rule, in retrospect, appears "to form part of a consistent pattern of procedures."

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457-8 (1958); *Ford v. Georgia*, 498 U.S.

411, 424 (1991).

The Fifth Circuit has clearly underlined the fact that any state procedural rule must be

clearly announced:

> Additionally, the state procedural rule must be "*clearly announced*
> to defendant and counsel." *Henry v. Mississippi*, 379 U.S. 443, 448
> n.3, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965). If the state does not
> *clearly announce* the procedural rule or the state courts do not
> strictly or regularly follow the procedural rule, then the federal
> courts may reach the issue the state court refused to address. *Barr*,
> 378 U.S. at 149, 12 L. Ed. 2d at 769.

*Wheat v. Thigpen*, 793 F.2d 621, 624 (5th Cir. 1986) (emphasis added). The Eighth Circuit has

also used the phrase "reasonably ascertainable" to describe the requirement. *White v. Bowersox*,

206 F.3d 776, 780 (2000 8th Cir.). In *White*, 206 F.3d at 782, the Eighth Circuit found that, "[i]n the absence of any precedent, we do not see how Mr. White could have known the legal significance of [his actions] before the Missouri Supreme Court did.  In sum, this principle was also neither readily ascertainable nor firmly established at the time of Mr. White's case."  In a case in which "a habeas petitioner was apprised of a remedy only by a state court decision which simultaneously established that the deadline for that remedy had passed" one cannot bar federal habeas corpus review. *Pearson v. Norris*, 52 F.3d 740, 742 (8th Cir. 1995).

The CCA had never previously "announced" the rule applied to Mr. Austin and has only done so now to the extent of an unpublished, *per curiam* in Mr. Austin's case.

It is worth emphasizing that in addition to being announced, a rule must be clear.  In order for the state's assertion of a procedural default to prevail, state law must clearly support the existence of the alleged procedural requirement. *County Court of Ulster County v. Allen*, 442 U.S. 140, 150-151 (1979) (State's claim of default rejected where state had "no clear contemporaneous-objection policy that applies in this case."); *Ashby v. Wyrick*, 693 F.2d 789, 793-94 (8th Cir. 1982). (No procedural default where state law was "at least arguably confusing")

A state rule will not be adequate if the first time it is stated with clarity is in the instant case. *Thomas v. Davis*, 192 F.3d 445, 450-3 (4th Cir. 1999) (State rule not adequate where it eluded ready identification as applied to the facts of the instant case and "a rule sought to be applied for the first time cannot have been consistently or regularly applied in the past.")

In Mr. Austin's case the CCA applied a rule based upon a wholly novel interpretation of the statute that is not clear from the statute itself.

The novelty of the rule applied by the CCA is apparent on the face of the record in this

case; the opinion of experts in Texas criminal procedure; the failure of the CCA to publish its decisions and from a study of the CCA's own unpublished decisions.

> (i)    *The Record In Mr. Austin's Case Shows That The Rule Applied To Mr. Austin Is A Wholly New One, "Announced" For The First Time In His Case*

Everybody involved in this case from the trial judge, to the prosecutor to counsel for Mr. Austin was taken completely by surprise by the new rule stated by the CCA on May 26, 2004 and this is clear from the record in this case.

Mr. Austin, a suicidally depressed prisoner, contacted a Harris County Homicide detective and confessed to a decade old killing in the express hope of receiving the death penalty. He represented himself, entered a plea of guilty, effectively asked the jury for death and when he was sentenced to die refused to appeal or have habeas counsel appointed.  He was brought to the District Court on June 2, 2003 to have an execution date set.   On that occasion, having apparently been reminded by the District Attorney's office, the trial judge enquired directly of Mr. Austin who he would be able to contact if he changed his mind and wished to pursue legal action in his case.   The court then indicated that it would contact his spiritual adviser for Mr. Austin and ensure that she had the court and the prosecutor's contact details in case of such an eventuality.  *State v Perry Austin*, No. 870,377, *Excerpt Hearing From The 339th Judicial District*, June 2, 2003.

When Mr. Austin ultimately did seek the appointment of habeas counsel to pursue his legal remedies the trial court, without any objection from the state, appointed counsel by order of September 24, 2003.  With the consent of the state the trial court also found good cause pursuant to §11.071 (4)(b) and granted Mr. Austin an extension of 90 days within which to file his application, extending the filing date to Monday June 21, 2004.

On May 26, 2004, in response to Mr. Austin's application for leave to file a skeletal

application in order to preserve his federal rights, the CCA slammed the door closed on Mr.

Austin, stating

> The statutory terms do not precisely apply to the procedure that the applicant followed in this case.  He waived the appointment of habeas counsel in 2002, and chose to be his own counsel on appeal and habeas.  He failed to file a brief on appeal, and, on January 13, 2003, the State waived its right (sic) file a brief on appeal.
>
> We hold that in light of the procedural history in this case, Article 11.071, Section 4(a) should be interpreted thus:
>
> The term "the date the convicting court appoints counsel under Section 2" shall mean the day that the applicant waived counsel and chose to represent himself on habeas.  The term "the date the state's original brief is filed on direct appeal with the court of criminal appeals" shall mean the day that the State waived its right to file a brief on appeal.

*Ex Parte Perry Allen Austin*, No. 74,372 (Tex. Crim. App. May 26, 2004) (unpublished).  The

CCA's opinion was an unpublished per curiam delivered without notice or an opportunity to

brief the issue.

Left with no other choice, Mr. Austin filed his application for writ of habeas corpus "in

what would have been a statutorily proper time if the statutory times had been calculated from

the date counsel was appointed." *Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004)

(unpublished).

The procedure in the case of an untimely filing is for the judge of the convicting court to

send to the court of criminal appeals a copy of the application along with a statement that it is

untimely and any order the judge determines should be attached. §11.071(4)(d)

The judge of the convicting court prepared an order entitled, "Findings of Fact,

Conclusion/Recommendation and Order" dated June 29, 2004 recommending that the CCA find

good cause for the untimely filing and extend the filing date accordingly.  The order included the

following findings of fact:

24. The Court finds that habeas counsel's and the State's belief that the applicant's time for filing an application for writ of habeas corpus began on September 24, 2003, the date of appointment of counsel, was a mistaken belief made in good faith and was not an attempt to subvert the jurisdictional requirements of TEX. CODE CRIM. PROC. Art. 11.071.

25. The Court finds that habeas counsel's and the State's mistaken belief arose from the uniqueness of the applicant's case and from the State's previous encounters with cases in which a defendant waived habeas, after the statutory deadlines had been met, and later decided to proceed in habeas.

26. The Court finds that the Court of Criminal Appeals' May 26, 2004 order clarifies the applicant's unique situation by its specific interpretation of TEX. CODE CRIM. PROC. Art. 11.071.

27. The Court finds that neither the State nor the Court intended that the applicant be precluded from pursuing his legal remedies under TEX. CODE CRIM. PROC. ART. 11.071.

*Ex Parte Perry Allen Austin*, No. 870377, Findings of Fact, Conclusion/Recommendation And Order (June 29, 2004).

The CCA ultimately determined that good cause had not been shown but in issuing its order made the following telling finding:

A week before applicant was to be executed, he notified the trial court through pro bono counsel, that he wished to pursue his state writ of habeas corpus. The trial court then appointed counsel who proceeded under the assumption, as did the trial court and the State, that he had time to file an initial application for writ of habeas corpus.

*Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (unpublished).

The above review of the record in this case demonstrates that the rule stated by the CCA in its May 26, 2004 was completely unheard of by representatives of the defense, prosecution and the bench in one of the busiest capital jurisdictions in Texas and that the ruling came as a complete surprise. The judge in the convicting court noted the uniqueness of Mr. Austin's situation and specifically mentioned that the procedure adopted in the trial court was consistent with the experience of the State in other cases where a prisoner initially waived habeas counsel

and later decided to proceed after the statutory deadlines had expired.

> (ii)   *The evidence of expert witnesses in criminal law and procedure in Texas Shows That The Rule Applied To Mr. Austin Is A Wholly New One, "Announced" For The First Time In His Case*

In order to establish that the rule applied by the CCA had not previously been announced Mr. Austin also relies upon the statements of experts in criminal procedure in the State of Texas as to the prevailing practice in the state and as to the announcement of any relevant procedural rules. Exhibited to this motion are affidavits and declarations from a cross-section of senior, experienced and respected lawyers practicing criminal law in the state. As one, they all confirm that until May 26, 2004 there had been no rule announced to the effect that habeas deadlines run from the date of waiver of appointment of counsel and all express their surprise at the rule stated by the CCA.

The affidavits and declarations are exhibited in full and the Court is urged to read them in their entirety but the following excerpts provide a flavor of the evidence of these experts.

Charles Baird – Former Judge, Texas Court of Criminal Appeals, stated:

> From November 1990 through 1998, I served as a judge on the Texas Court of Criminal Appeals. I am currently a Visiting Professor of Law at the South Texas College of Law, Houston, Texas, where I teach criminal law and criminal procedure. From January 1999 through the Spring of 2004, I was Adjunct Professor at the same school. I also serve as a Visiting Justice, Thirteenth Court of Appeals, Corpus Christi, Texas. Prior to sitting on the Court of Criminal Appeals I spent ten years in private legal practice in Houston, Texas.
>
> * * * *
>
> Until I read the Court's unpublished order of May 26, 2004 I was unaware of any interpretation of Texas Code of Criminal Procedure § 11.071(4) to the effect that the statute ran from the date the prisoner waived the appointment of counsel and chose to represent himself on habeas.
>
> In my opinion and to the best of my knowledge, the rule contained in the Court's unpublished order of May 26, 2004 is an entirely new rule.

This new rule is surprising since § 11.071(4) specifically refers to the date "the convicting court appoints of counsel." Consequently, the Court's interpretation is clearly inconsistent with the plain language of the statute. Moreover, in my opinion, the interpretation is inconsistent with the intention of the legislature that habeas petitioners in capital cases be provided with one competently represented, fully funded habeas application.

\* \* \* \*

Reading the statute and being familiar with the decisions and practice of the Court of Criminal Appeals I do not believe the Court's interpretation was the only logical interpretation, or even the one most likely to be adopted.

Exhibit 1, Affidavit of Charles F. Baird, October 5, 2004

Richard E. Burr – Federal Death Penalty Resource Counsel, stated

I am an attorney admitted to the bar in the state of Texas and am in private practice in Houston with the firm of Burr & Welch. Since 1979 I have worked almost exclusively in the field of death penalty defense, first with Southern Prisoners Defense Committee, and then with the Public Defender's Office in West Palm Beach, Florida, the NAACP Legal Defense Fund, the Texas Resource Center, and finally, in my private practice.

I have argued two cases in the United States Supreme Court, *Ford v. Wainwright*, 477 U.S. 399 (1986), which established the right of incompetent death-sentenced prisoners to be spared from execution, and *Selvage v. Lynaugh*, 494 U.S. 108 (1990), a case which set the stage for the relaxation of procedural default rules for claims under *Penry v. Lynaugh*.

I have testified before U.S. Congressional committees on death penalty legislation on three occasions, have presented CLE programs on capital and appellate litigation in twenty states and in numerous national death penalty training conferences, have taught a death penalty seminar at Yale University's College of Law, and in 1998 received the Life in the Balance Achievement Award from the National Legal Aid and Defender Association for work done in capital defense over my career. I served as one of the attorneys for Timothy McVeigh in the Oklahoma City bombing trial and was the coordinator of the penalty phase defense for Mr. McVeigh.

I have contracted with the Administrative Office of the United States courts to serve as a Federal Death Penalty resource Counsel since October of 1997, providing consulting services to defense counsel in federal capital prosecutions.

\* \* \* \*

Until I read the Court's order of May 26, 2004 I was

14

unaware of any interpretation of § 11.071(4) to the effect that the statute ran from the date on which a prisoner waived the appointment of counsel and chose to represent himself on habeas.

I have searched LEXIS and Westlaw for any previous reference to such an interpretation of § 11.071 and the rule announced in the Court's May 26, 2004 ruling has not previously been the subject of any published decision or scholarship. Further, I am unaware of any unpublished decision of the Court of Criminal Appeals invoking a rule to this effect.

In my opinion and to the best of my knowledge, the rule contained in the Court's order of May 26, 2004 is an entirely new rule.

I am surprised by the Court's interpretation of § 11.071(4) as the plain words of the statute refer to the date of appointment of counsel. The gloss placed upon these words by the Court limits the access of prisoners to habeas relief and appears inconsistent with the legislature's emphasis upon the appointment of adequately funded, competent counsel as instrumental in ensuring the reliability and fairness of habeas proceedings.

Exhibit 2, Affidavit of Richard E. Burr, October 4, 2004.

Mr. Jim Marcus, Director, Texas Defender Service, stated:

I am an attorney licensed in the state of Texas. I am currently the Executive Director of the Texas Defender Service (TDS), a non-profit organization devoted exclusively to death penalty litigation, and have served in that capacity since January of 1997. From October of 1995 to January of 1997, I was a staff attorney with TDS. From September, 1993 through September, 1995, I was employed at the Texas Resource Center – a federally-funded agency devoted to capital habeas corpus litigation – first as an investigator and then as a staff attorney. In addition to the State of Texas, I am licenced to practice in the United States Supreme Court; the United States Court of Appeals for the Fifth and District of Columbia Circuits; and the Southern, Northern, and Western United States District Courts of Texas. I am an Associate Director of the Texas Criminal Defense Lawyer's Association and a member of the Board of Directors of the Texas Innocence Network.

For the last eleven years, my practice has been devoted exclusively capital post-conviction cases. In addition to serving as counsel of record in numerous cases in state and federal courts, I have also consulted in dozens of capital habeas cases. For most of the past decade, I have participated in 20 to 40 hours each year of continuing legal education (CLE) courses devoted to death penalty

litigation. I also regularly serve as faculty in CLE courses about state and federal capital post-conviction litigation. I have studied Texas' statutory capital post-conviction system since its inception in 1995, including the legislative history, and contributed to TDS' 2002 study of the Texas capital post-conviction process (available at: www.texasdefender.org/publications.htm).

* * * *

Prior to the CCA's May 26, 2004, order, there was absolutely no indication that the statute of limitations codified in § 11.071(4) of the Texas Code of Criminal Procedure ran from the date on which a prisoner waived the appointment of counsel and chose to represent himself on habeas. In my opinion, and to the best of my knowledge, the rule contained in the Court's order of May 26, 2004, is an entirely new rule and a clear break from the Court's handling of similarly situated habeas applicants.

I am unaware of any published authority on this point, however the CCA rarely publishes opinions or orders relating to capital habeas corpus cases.

* * * *

In addition to being an inconsistent application of the statute of limitations to identically situated litigants, the Court's interpretation of § 11.071(4) is surprising because it is contrary to the plain language of the statute as well as the legislative intent to allow one full and fair round of habeas corpus review.

Exhibit 3, Affidavit of Jim Marcus, October 6, 2004.

Jack Zimmerman – Deputy Special Prosecutor, stated:

I am an attorney licensed in the state of Texas and in private practice in Houston. I have served in the past as the Chairman of the Criminal Law Section of the Association of Trial Lawyers of America, the President of the Texas Association of Board Certified Specialists in Criminal Law, a Director of the Texas Criminal Defense Lawyers Association, the President of the Harris County Criminal Lawyers Association, and am currently the Chairman of the Military Law Section of the National Association of Criminal Defense Lawyers. I have been board certified in criminal law by the Texas Board of Legal Specialization since 1980, and by the National board of Trial Advocacy since 1981. I have taught at legal seminars in 24 states of the United States, and in Canada, Ireland, and Japan. My practice has included the trial, appeal, and writ of habeas corpus aspects of criminal law, including capital cases. Included is the successful representation of Clifford Henry Bowen, whose three death sentences were set aside after a federal writ of habeas corpus, and who was then cleared after the case was

returned for retrial. In addition, I was co-counsel on appeal of a writ of habeas corpus in the Gary Graham capital murder case that many believe led to the passage of the Texas Fair Defense Act. I have been a guest commentator on legal issues, including the Texas death penalty, on several national televisions networks and on cable television. Since February 2004, I have been serving as a Deputy Special Prosecutor in Dallas, Texas, investigating the Dallas County District Attorney's office, and others, regarding the fake drug scandal in Dallas in 2000-2002.

\* \* \* \*

Until I read the Court's order of May 26, 2004 I was unaware of any interpretation of Article 11.071 Section (4) to the effect that the statute ran from the date on which a prisoner waived the appointment of counsel and chose to represent himself on habeas.

In my opinion and to the best of my knowledge, the rule contained in the Court's order of May 26, 2004 is an entirely new rule.

I am surprised by the Court's interpretation of Article 11.071 Section (4) as the plain words of the statute refer to the date of appointment of counsel. The Court's interpretation reduces the access of prisoners to habeas relief and seems inconsistent with the legislature's emphasis upon the appointment of adequately funded, competent counsel to ensure the reliability and fairness of habeas proceedings.

I note that both orders of the Court of Criminal Appeals are unpublished. Although they are of no authority as precedent, they effectively end the Applicant's life as far as the State courts are concerned.

In my opinion, the wording of the two provisions of Article 11.071 Section 4 leave to the convicting trial court the duty and discretion to appoint counsel and determine the issue of an extension of time in which to file a writ of habeas corpus. Evidence may be needed to determine if good cause exists, or to determine if in fact any purported waiver was valid and the act of a mentally competent prisoner. It also permits the State to agree to a seemingly untimely appointment of counsel or submission of an application for a writ of habeas corpus, in the interest of justice. The new rule announced in the unpublished orders of the Court of Criminal Appeals in this case strips the State of its ability to fulfill its statutory duty to see that justice is done, and ties the hands of a state district judge, who it is presumed knows the facts of the case and of the Applicant's status better than any other member of the judiciary.

Exhibit 4, Affidavit of Jack B. Zimmermann, October 5, 2004.

These affidavits and declarations provide incontrovertible evidence that the rule applied to Mr. Austin is not adequate. If the rule had been clearly announced and were not simply a new rule at least one of these experts would have heard of it. In fact, not only had none heard of it but it was not possible to find any reference to such a rule through legal research and the terms of the rule came as a surprise to each of the experts.

> (iii)    *A Survey of CCA approved habeas lawyers Shows That The Rule Applied To Mr. Austin Is A Wholly New One, "Announced" For The First Time In His Case*

In order to determine whether anyone had ever heard of or could even guess at the existence of the rule applied by the CCA in Mr. Austin's case a survey was undertaken of CCA approved habeas lawyers. (For details see Exhibit 5, Affidavit of Eleni Antonopulos as to Survey of CCA Approved Attorneys).

Pursuant to *Texas Court Of Criminal Appeals' Rules For The Appointment Of Attorneys As Counsel Under Article 11.071 Sec. 2(D), V.A.C.C.P.* the CCA maintains a list of counsel eligible to be appointed to represent indigent defendants in state habeas proceedings. Counsel must apply, meet certain requirements and be approved by the CCA to be placed on the list. The list of eligible attorneys is available on the CCA website.

A survey was mailed to each of the attorneys on the list detailing the procedural posture of Mr. Austin at the date of filing and asking whether, in their opinions, his filing was timely and what rule or case controlled this outcome. Of the sixteen attorneys surveyed none had ever heard of the rule stated by the CCA on May 26, 2004 and only one reached the same conclusion as the CCA in analyzing the situation.

Expressed another way, not one of the attorneys approved by the CCA to represent indigents in capital habeas proceedings had ever heard of the rule stated by the CCA on May 26,

2004 and only one even imagined that such a rule might be applied to a capital defendant in Mr.

Austin's position.

It is impossible to maintain a position that the rule applied by the CCA has been clearly

announced or strictly and regularly followed when even those attorneys hand-picked by the CCA

for this specialized area of work have never heard of it.

> (iv)    *The Published Decisions of The CCA Show That The Rule Applied To Mr.
> Austin Is A Wholly New One, "Announced" For The First Time In His Case*

A review of the published opinions of the CCA shows that there are no cases in which the

CCA has previously announced its new rule that the time for filing state habeas runs from the

date of waiver of appointment of counsel, rather than the date of appointment of counsel as is

clearly stated in the statute.

In fact, from the few published opinions regarding the time limits imposed by

§11.071(4), the impression given is to the contrary of the new rule. In particular, the decision of

the CCA in the case of Ricky Kerr suggests an different approach than that adopted in the case of

Mr. Austin. *Ex parte Kerr*, 64 S.W.3d 414 (Tex. Crim. App. 2002). The procedural background

to the *Kerr* case emerge from the decision of the CCA:

> On November 16, 1995, a jury found applicant guilty of capital
> murder for the double murders of Elizabeth McDaniel and her son
> Gary Barbier. The jury then answered the statutorily mandated
> special punishment issues in a mannerwhich required the trial court
> to assess a sentence of death. Direct appeal to this Court was
> automatic. On June 18, 1997, this Court affirmed applicant's
> conviction and death sentence in an unpublished opinion. *State v.
> Kerr*, 64 S.W.3d 414 (Tex. Crim. App. 1997).
>
> Meanwhile, this Court had appointed applicant an attorney to
> represent him for purposes of filing a habeas corpus writ pursuant
> to article 11.071. On July 22, 1997, that original habeas counsel
> filed a document with the convicting court entitled "Application
> for Post-Conviction Writ of Habeas Corpus Brought Pursuant to
> Article 11.071 of the Texas Code of Criminal Procedure."

*Ex parte Kerr*, 64 S.W.3d at 415-6.  The Court denied relief on the pleading filed on July 22, 1997. *Ex parte Ricky Eugene Kerr*, slip op., No. 35,065-01 (Tex. Crim. App. delivered September 24, 1997) (unpublished) (Meyers & Price, J.J., not participating).  Following this denial the trial court set an execution date and Mr. Kerr filed for a stay of execution and for habeas relief on the basis of the ineffectiveness of his initial habeas counsel.  This application was denied on February 23, 1998.

A stay was then granted by the federal court and after time was allowed to conduct post-conviction investigation a habeas petition was filed in federal court.  On February 24, 1999 this petition was dismissed without prejudice to allow Mr. Kerr to exhaust each of his new claims in state court. *Kerr v. Johnson*, slip op., No. SA-98-CA-151-OG (W.D. Tex. Dated Feb. 24, 1999) (unpublished).

On March 1, 1999 Mr. Kerr filed a new habeas application in state court which was forwarded to the CCA pursuant to art. 11.071 §5 to determine whether it was a subsequent writ application.  The CCA determined that none of Mr. Kerr's earlier filings amounted to an application for a writ of habeas corpus because they did not seek relief from his sentence of death and that as a result Mr. Kerr's filing of March 1, 1999 was to be regarded as an initial filing. *Ex parte Kerr*, 64 S.W.3d at 417-8.

The question then arises as to whether Mr. Kerr's filing of March 1, 1999, years after the appointment of habeas counsel and the filing of the state's response on direct appeal, could be considered a timely filing.  The CCA in its opinion determined that as Mr. Kerr had not yet had a full and fair opportunity to present his claims:

> Of course, this entire statute is built upon the premise that a death
> row inmate does have one full and fair opportunity to present his
> constitutional or jurisdictional claims in accordance with the

procedures of the statute.

Ricky Lee Kerr has not yet had that one full and fair opportunity. The present application is the first document in which applicant's claims and contentions, if true, might merit "relief from a judgment imposing a penalty of death." Art. 11.071, § 1.

\* \* \* \*

In sum, we hold that the timely filed document submitted by applicant's original habeas counsel was not "a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death." Therefore, the application for a writ of habeas corpus filed by Mr. Kerr's present habeas counsel on August 6, 2000, is his initial writ for purposes of art. 11.071. We consider it timely filed as of today's date, issue the writ by operation of law pursuant to art. 11.071, § 6(a), and return the initial application and all associated materials to the trial court for further proceedings.

*Ex parte Kerr*, 64 S.W.3d at 419-21. It should be noted that the CCA was considering Mr. Kerr's petition under the statute as it existed before the promulgation of art. 11.071 § 4A and that there was no ability at the time of the court's decision to extend the time for filing any more than ninety days even upon a showing of good cause. *Ex parte Smith*, 977 S.W.2d 610 (Tex. Crim. App. 1998). Importantly, the CCA expressly did not find good cause arising from ineffectiveness of initial habeas counsel, both rejecting this as a matter of principle and refusing to consider initial habeas counsel ineffective in any event. *Ex parte Kerr*, 64 S.W.3d at 417-8

Rather, the CCA determined that Mr. Kerr had only in August 2000 filed an initial habeas application and that the refusal to consider the application would be inconsistent with the premise of the statute requiring that every death row prisoner have one full and fair opportunity for his habeas claims to be heard. Given this, the CCA determined to consider Mr. Kerr's initial habeas application timely filed on the date of its decision, January 2, 2002. This was approximately five years after the appointment of habeas counsel and the filing of the state's

petition.

Ex parte Kerr stands for the proposition that the CCA will consider timely filed an initial habeas application even when it is actually filed well outside of the statutory time limits in order to ensure that every death row prisoner have one full and fair opportunity for his habeas claims to be heard.  As a statement of principle by the Court, *Kerr* tends to suggest that the court's approach would be to consider Mr. Austin's claims timely filed and certainly does not provide any comfort to the suggestion that the CCA had previously announced its rule regarding the calculation of time from the date of waiver of appointment of counsel.

> (v)    *A Study of CCA practices from Its Unpublished Opinions Shows That The Rule Applied To Mr. Austin Is A Wholly New One, "Announced" For The First Time In His Case*

As observed by one of the expert witnesses consulted on the CCA's procedural rules, "the CCA rarely publishes opinions or orders relating to capital habeas corpus cases." Exhibit 3, Affidavit of Jim Marcus, October 6, 2004.

Under Texas law unpublished decisions of the CCA "have no precedential value and must not be cited as authority by counsel or by a court." *Texas Rules of Appellate Procedure*, Rule 77.3.

Given this, an unpublished opinion, such as that issued in Mr. Austin's case on May 26, 2004 could never serve to clearly announce a procedural rule such that it would be cognizable to default a federal claim.   Nevertheless, a detailed study of unpublished decisions of the Court of Criminal Appeals in capital habeas cases was undertaken in order to prove that the rule stated in Mr. Austin's case has never previously been announced and to show that the rules of timing have not been strictly and regularly applied by the CCA.

The study involved a review of 162 initial state habeas filings in capital cases since the

inception of Art. 11.071 on September 1, 1995.[4]  For details see Exhibit 6, Affidavit of Eleni

Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004.[5]

The review of 161 capital habeas case files showed that the CCA had never announced

the rule that it applied to Mr. Austin in any of those cases and that in fact, when faced with an

identical situation had applied the opposite rule – calculating time under the statute from the date

of eventual appointment of counsel, not the date of initial waiver of appointment.

> There was no evidence in any of the 162 capital habeas cases
> surveyed of the CCA having applied or announced a rule that time
> for state habeas runs from the date of waiver of appointment of
> habeas counsel.  Of the 162 capital habeas cases surveyed there
> was only one case identified where appointment of habeas counsel
> was initially waived and then habeas counsel was later appointed.
> In the case of William Murray the CCA directed the trial court to
> do exactly what the trial court did in Mr. Austin's case.  In Mr.
> Murray's case the courts did not announce a rule that time ran from
> the date of waiver of appointment of habeas counsel but instead
> considered the application timely filed when it was filed 270 days
> after the appointment of counsel, even though he had waived the
> appointment of counsel more than a year earlier.

Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7,

2004.

> (vi)     *Conclusion*

In conclusion, Mr. Austin's position can be very firmly stated.  On May 26, 2004 in Mr. Austin's

case the CCA stated a rule of procedure that it had never previously announced and then applied

it with shocking ferocity to Mr. Austin, effectively ordering that he be sent to his death.

The rule announced by the CCA is contrary to the express wording of the statute and

contrary to the apparent intent of the statute and the previous decision of the CCA in *Ex parte*

---

[4]  It became clear during the study that the records of the CCA are incomplete and that a number of files were
unavailable for review because they were being used by the State or the Court itself..
[5] For further details see Ms. Antonopoulos' procedural affidavit, Exhibit 7.

*Kerr* (*supra*). The new rule was expressed in an unpublished per curiam, delivered without notice or an opportunity to brief on the issue. The new rule came as a shock to those involved in Mr. Austin's case, including the trial judge, the prosecutor and appointed habeas counsel and is inconsistent with the experience of the prosecuting authorities in Harris County in dealing with similar cases. The new rule also comes as a complete shock to the panel of Texas legal experts who have provided evidence in the form of affidavits and declarations to this effect stating that in their opinion the rule is a new and surprising rule, with no precursor in the jurisprudence of the Court. The new rule is also unanticipated by the CCA's own group of approved state habeas counsel who have not only not heard of it but were unable to predict its effect. Finally, no sign of the emergence of the new rule could be discovered in a review of over 150 recent capital habeas cases in Texas. To the contrary, this review disclosed that in an identical case decided only a few years earlier the CCA had done the exact opposite to that which was done in Mr. Austin's case.

Mr. Austin has been subject to the capricious and arbitrary application of a new procedural rule "announced" for the first time in his very case. This new rule, however, cannot bar the review of Mr. Austin's claims by this court as it "does not even remotely satisfy the requirement that an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

### (b) Firmly Established and Regularly Followed

To produce a federally cognizable default, the state procedural rule "must have been 'firmly established and regularly followed' by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) citing *Ford v. Georgia*, 498 U.S. 411, 424, 112 L. Ed. 2d 935, 111 S. Ct. 850 (1991) and *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). See

also *James v. Kentucky*, 466 U.S. 341, 348-351 (1984) (Only a state procedure that is "firmly established and regularly followed" can be used to bar subsequent federal review.) *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (stating that in order to be adequate a state procedural rule must be "strictly or regularly followed"); *Wheat v. Thigpen*, 793 F.2d 621, 624 (5th Cir. 1986) (citing *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982); *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964)) ("The Supreme Court has repeatedly stressed that a state procedural rule is not entitled to respect as an independent and adequate state ground unless the procedural rule is 'strictly or regularly followed.'").

Whether the rule is "firmly established and regularly followed" must be established at "the time as of which it is to be applied." *Ford*, 498 U.S. at 424.  There is some debate about whether the relevant time for this determination is at the time of the defaulting act (here, expiry of the deadline for timely filing) or at the time the state court applies the defaulting rule.  In this case the precise date to be considered does not matter.  As discussed above, the calculation of time under the statute from the date of waiver of appointment was a rule that had never been established or applied.   Further, the history of the court's treatment of waivers of appointment of counsel and of untimely filings demonstrates that the rules as applied to Mr. Austin had not previously been firmly established or regularly followed.

> (i)      *The CCA had previously applied the exact opposite procedural  rule where appointment of counsel was waived:  the William Murray Case*

There is no published decision of the CCA detailing the rule to be applied where an indigent defendant initially waives the appointment of habeas counsel and, as the CCA acknowledged, "the statutory terms do not precisely apply to the procedure that the applicant followed in this case." *Ex Parte Perry Allen Austin*, No. 74,372 (Tex. Crim. App. May 26, 2004) (unpublished).

However, a detailed review of the unpublished records of the Court of Criminal Appeals has disclosed a case that was remarkably similar in its circumstances to Mr. Austin's but in respect of which the CCA reached an entirely opposite conclusion.

On June 3, 1999 William Murray was sentenced to death in Kaufman County, Texas. On July 29, 1999 Mr. Murray executed a sworn waiver of appointment of habeas counsel:

> I have been advised by the 86 Judicial District Court, Kaufman County, Texas of my right to representation of counsel for writ of habeas corpus in the capital murder case for which I have been convicted and for which I am currently under sentence of death . . . I do not want a lawyer appointed for me. I do not want an application for writ of habeas corpus filed on my behalf.

Exhibit 8A (Waiver of Appointment of Habeas Counsel by William Murray)

On August 10, 1999 Senior District Judge, Don Metcalfe, made findings of fact pursuant to § 11.071 finding that Mr. Murray's waiver of appointment of habeas counsel was fully competent:

> The Court having been advised by the Defendant by his sworn statement attached hereto and incorporated herein for all purposes that he does not want an application for writ of habeas corpus filed on his behalf in this cause, nor does he wish to have an attorney appointed to file same, the court finds that defendant is fully competent to make such election and approves same and enters same as a finding of fact herein.

Exhibit 8B *Findings of Fact Pursuant to Article 11.071 C.C.P.*

In October 1999 Mr. Murray filed a motion in the CCA indicating that he wished to waive his appeals and seeking a hearing at which he could establish that he was competent to do so. By order dated November 1, 1999 the CCA directed the trial court to conduct a hearing and make findings of fact and law as to Mr. Murray's desire to waive his right to appeal. The hearing was held on November 19, 1999. Mr. Murray was represented by appointed appellate counsel; he gave evidence and was cross-examined. Prior to his trial Mr. Murray had been seen

by mental health professionals Dr. Strayhan and Dr. Grigson  Both testified at his trial and

neither raised any concern about his competence.  Mr. Murray's counsel indicated at the hearing

that he had spoken to his client, his client understood the nature of his decision and that there

were no issues of competency.

By Memorandum dated December 6, 1999 the District Court announced its findings of

fact and conclusions of law that

> William A. Murray has voluntarily, knowingly and intelligently
> given up his right to appeal.

Exhibit 8C, *Memorandum of Judge Metcalfe, 12/6/99*.  On January 19, 2000, without briefs

having been submitted, the CCA reviewed the record for fundamental error and affirmed the

judgment of the trial court.  *Murray v State*, No. 73,454 (Tex. Crim. App., January 19, 2000).

Exhibit 8D.  Following the affirmance by the CCA Mr. Murray determined that he wished to

pursue his appeals and, through counsel, filed a motion for rehearing.  On March 29, 2000 the

motion was denied and the CCA issued its mandate that same day.  Exhibit 8E

An execution date of July 11, 2000 was set and, following the advice of Mr. Bryce Benjet

of the Texas Defender Service, Mr. Murray wrote to Judge Metcalfe seeking the appointment of

habeas counsel.  Mr. Benjet contacted Judge Metcalfe who advised that he would only appoint

counsel and stay the execution date if ordered by an appeals court.  Exhibit 8F.  Mr. Murray filed

a pro se motion in the Court of Criminal Appeals seeking to compel the District Court to appoint

counsel and stay the execution.  Exhibit 8G  By order of June 7, 2000 the CCA vacated Mr.

Murray's execution date and directed the District Court to appoint counsel, stating:

> Appellant has now filed a "Motion to compel the District
> Court to Appoint Counsel and withdraw the July 11, 2000
> Execution Date in Compliance with Article 11.071, V.A.C.C.P."
> Within the motion, Appellant notes he has now decided he "would
> like to have an attorney appointed to me to represent me in my

> habeas appeal."
> Upon due consideration, appellant's motion is granted. The
> trial court is directed to appoint counsel under the provisions of
> Art. 11.071, Sec. 2(c), V.A.C.C.P., within 30 days of the date of
> this order. In view of appellant's decision to pursue an application
> for writ of habeas corpus, the currently scheduled execution date is
> vacated. See Art. 43.141, V.A.C.C.P.

*Murray v Texas*, No. 73,454 (Tex. Crim. App. 6/7/00).  Exhibit 8H.

It should be noted that the CCA ordered the appointment of counsel under §11.071(2)(c),

the ordinary provision for the appointment of counsel, rather than under §11.071(5) which deals

with situations where there has been a failure to timely file a brief.  It should also be noted that

the CCA's order comes long since the expiry of the CCA's newly announced deadline of 180

days from the date of waiver of habeas counsel or 45 days from the date of the state's waiver of

its right to file a brief on appeal.

By order dated June 15, 2000 the District Court appointed habeas counsel and then on

June 30, 2000 issued an amended order appointing counsel.[6] Exhibit 8I & J.  Both orders clearly

stated that the appointment was made "under Article 11.071, Sec. 2(c), V.A.C.C.P.

Appointed counsel sought an extension of the 180 day period within which the brief was

due to be filed and this was granted.  Mr. Murray's application for writ of habeas corpus was

ultimately filed on March 27, 2001, precisely 270 days after the amended order for appointment

of counsel issued on June 30, 2000.  ·

On September 5, 2001 the District Court adopted and incorporated the State's Proposed

Findings of Fact and Conclusions of Law. Exhibit 8K It treated Mr. Murray's petition as timely

filed, considered it on the merits and denied relief.

On October 3, 2001 the CCA considered the merits of Mr. Murray's application and

---

[6] The amended order inserted a finding of good cause for appointing as habeas counsel the same attorney who had
been appointed as counsel on direct appeal.

ultimately denied the application.  Exhibit 8L

In a case <u>identical</u> to that of Mr. Austin the Court of Criminal Appeals took positive action to appoint counsel following an initial waiver and counted time as running only from the date of appointment.   The comparison between the treatment of the two cases is neatly summarized by Mr. Jim Marcus, Director of the Texas Defender Service:

> Just like Mr. Austin, Mr. Murray did not decide to pursue relief until more than 45 days had passed since his direct appeal was ripe for submission and more than 180 days since he declined the appointment of habeas counsel.   Although Mr. Murray's application was filed a year-and-a-half after he initially waived the right to counsel, it was deemed timely by the Texas courts and adjudicated on the merits.  If the Texas courts had applied the same rule to Mr. Murray it recently created in Mr. Austin's case, Mr. Murray's application would have been dismissed as out-of-time. Instead, the CCA was faced with the exact same set of circumstances under the exact same statute but came to the exact opposite conclusion.

Exhibit 3,  *Affidavit of Jim Marcus, October 6, 2004.*

In these circumstances, the procedural rule invoked by state "does not even remotely satisfy the requirement that an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

> (ii)    *A Review of CCA Files Has Revealed That the Rules Regarding the Treatment of Untimely filed Petitions Are Not Firmly Established And Regularly Followed*

As described above, a survey was taken of 162 initial capital habeas cases in an effort to determine whether the rules applied to Mr. Austin were new rules and whether they were firmly established and regularly followed.  (For details see Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004).

As discussed above, the survey uncovered no evidence that the CCA had ever previously

applied or announced the rule applied in Mr. Austin's case.  Moreover, the study identified the case of William Murray, a defendant in a virtually identical situation to Mr. Austin who was treated in exactly the opposite fashion by the CCA:

> Of the 162 capital habeas cases surveyed there was only one case identified where appointment of habeas counsel was initially waived and then habeas counsel was later appointed.  In the case of William Murray the CCA directed the trial court to do exactly what the trial court did in Mr. Austin's case.  In Mr. Murray's case the courts did not announce a rule that time ran from the date of waiver of appointment of habeas counsel but instead considered the application timely filed when it was filed 270 days after the appointment of counsel, even though he had waived the appointment of counsel more than a year earlier.

Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004.

The survey found that between 1995 and 1999 good cause was routinely found for the untimely filing of habeas petitions and that following the 1999 amendments extensions for good cause were routinely allowed.  Exhibit ###, Affidavit of Eleni Antonopulos as to Survey of CCA Approved Attorneys, October 7, 2004.

Critically, the survey found that while most of the 162 applications were timely filed, where applications were filed out of time in circumstances where the court could not cure the lapse by the grant of an extension the court, "in most cases", considered the applications on their merits in any event.  The survey identified eleven examples of cases where the CCA had considered habeas applications on their merits notwithstanding that they were untimely under either the 1995 or 1999 statutes.  Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004.

The survey also identified at least three cases where the court, without reference to Art. 11.071 § (4A), restarted the time-clock upon the appointment of counsel, notwithstanding that

counsel had been previously appointed. These cases are in addition to that of William Murray, where the time-clock was restarted upon the appointment of counsel even though there had previously been a waiver, and stand in stark contrast to the treatment of Mr. Austin. Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004.

The survey also identified the four cases out of those surveyed where the court came to consider whether good cause had been shown under Art. 11.071 § (4A) for untimely filing. In contrast to Mr. Austin's case, in every single case, even where good cause was not shown, the court permitted the filing of a habeas petition. Exhibit 6, Affidavit of Eleni Antonopoulos as to Unpublished Opinions of the CCA, October 7, 2004.

The evidence gathered by the survey establishes that not only was the rule of timing a new rule but that the procedural rules resulting in the dismissal of Mr. Austin's claims was not firmly established and regularly followed.

> (iii)    *Expert Opinion in Texas is That The Rules Applied in Mr. Austin's Case Have Not Been Strictly and Regularly Applied*

As described above, affidavits and declarations have been obtained from an array of experts in Texas criminal procedure to provide an insight in to the practice of the Texas CCA in dealing with waiver's of appointment of counsel and untimely filings.

The expert panel is comprised of: Charles Baird (Former Judge, Texas Court of Criminal Appeals); Richard E. Burr (Federal Death Penalty Resource Counsel); Jim Marcus (Director, Texas Defender Service); Jack Zimmerman (Deputy Special Prosecutor);

The experts have all agreed that to the best of their knowledge the procedural rule stated by the CCA on May 26, 2004 is a new rule, there had been no indication of any such rule in the past and that the experts were all surprised by the CCA's interpretation. Exhibits 1-4

Jim Marcus, Director of the Texas Defender Service provided evidence that far from

being a strictly and regularly followed procedural rule, the rule is new and inconsistent with past

practice of the CCA:

> \_  I am unaware of any published authority on this point, however the CCA rarely publishes opinions or orders relating to capital habeas corpus cases. In the year 2000, though, TDS assisted another death row inmate in identical circumstances. William Murray waived his right to direct appeal and habeas counsel, and sought his own execution. The trial court entered findings noting Mr. Murray's waiver of habeas corpus proceedings on or about August 10, 1999. Because of his suicidal depression, Mr. Murray also refused to file a direct appeal brief. Regardless, the CCA purported to conduct its own direct review of Mr. Murray's case and denied relief on January 19, 2000. In March of 2000, the trial court scheduled Mr. Murray's execution for July 11, 2000. After receiving treatment for his depression, Mr. Murray decided to pursue his appeals in April of 2000. Counsel was appointed for Mr. Murray on or about July 10, 2000, and his habeas application was filed on or about March 27, 2001.
>
> Just like Mr. Austin, Mr. Murray did not decide to pursue relief until more than 45 days had passed since his direct appeal was ripe for submission and more than 180 days since he declined the appointment of habeas counsel. Although Mr. Murray's application was filed a year-and-a-half after he initially waived the right to counsel, it was deemed timely by the Texas courts and adjudicated on the merits. If the Texas courts had applied the same rule to Mr. Murray it recently created in Mr. Austin's case, Mr. Murray's application would have been dismissed as out-of-time.
>
> In addition to being an inconsistent application of the statute of limitations to identically  situated litigants, the Court's interpretation of § 11.071(4) is surprising because it is contrary to the plain language of the statute as well as the legislative intent to allow one full and fair round of habeas corpus review.

Exhibit 3, Affidavit of Jim Marcus, October 6, 2004.

Former Judge of the Texas Court of Criminal Appeals, Charles Baird, confirms that the

CCA's practice in finding good cause and permitting untimely filings is not a firmly established

and regularly followed set of rules:

> I do not know the details of the petitioner's claim for good cause in this case but am aware of the practice of the Court and its practice in accepting that good cause has been shown. The Court's

> practice in finding good cause has at times been very liberal and in
> other cases has been quite strict. The Court's decisions in finding
> good cause have not been consistent.

Exhibit 1, Affidavit of Charles F. Baird, October 5, 2004

These expert opinions confirm the findings of the study of CCA cases in demonstrating

that the procedural rules used to default Mr. Austin have not been strictly or regularly followed

in the past.

> (iv)     *The Trial Court's Findings Show That The Rule Applied In Mr. Austin's Case
> Has Not Been Strictly and Regularly Applied*

As discussed above, the decision of the Court of Criminal Appeal in this case came as a

shock to the participants in the trial and the CCA's ultimate conclusion that Mr. Austin's

application should be dismissed was at odds with the expectations and recommendations of the

trial court.

In considering whether the procedural rules applied to Mr. Austin had been strictly or

regularly followed prior to his case being determined it is instructive to recall that the judge in

the convicting court expressly found that the "habeas counsel's and the State's mistaken belief

arose from the uniqueness of the applicant's case and from the State's previous encounters with

cases in which a defendant waived habeas, after the statutory deadlines had been met, and later

decided to proceed in habeas." *Ex Parte Perry Allen Austin*, No. 870377, Findings of Fact,

Conclusion/Recommendation And Order (June 29, 2004).

The experience of counsel for the state mirrored the approach taken in the William

Murray case and was the direct opposite of the rule stated by the Court of Criminal Appeals on

May 26, 2004 and its eventual dismissal of Mr. Austin's application.

The Court of Criminal Appeals' own findings belie the existence of a firmly established

and regularly followed practice where it makes a clear finding that the trial court, the state and

appointed counsel all proceeded on the basis that time began to run from the date of appointment of counsel.

> The trial court then appointed counsel who proceeded under the assumption, as did the trial court and the State, that he had time to file an initial application for writ of habeas corpus.

*Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (unpublished).

## 3   The rule applied to Mr. Austin is inconsistent with the words of the statute and is therefore novel and cannot bar federal merits review

The CCA's reading of 11.071 in Mr. Austin's case goes directly against the language of the statutory rule itself, highlighting that its new rule is novel and not an adequate basis for a state procedural bar.

Article 11.071 § (4)(a) provides that:

> An application for a writ of habeas corpus, returnable to the court of criminal appeals, must be filed in the convicting court not later than the 180th day after *the date the convicting court appoints counsel under Section 2* or not later than the 45th day after *the date the state's original brief is filed on direct appeal* with the court of criminal appeals, whichever date is later.

Article 11.071 §4(a).  Even though the CCA had previously applied this exact provision to William Murray, who was in an identical postion to Mr. Austin, the CCA in Mr. Austin's case held, that "the statutory terms do not precisely apply to the procedure that the applicant followed in this case." *Ex Parte Perry Allen Austin*, No. 74,372 (Tex. Crim. App. May 26, 2004) (unpublished).  The Court then went on to declare its new rule:

> We hold that in light of the procedural history in this case, Article 11.071, Section 4(a) should be interpreted thus:
> The term "the date the convicting court appoints counsel under Section 2" *shall mean* the day that the applicant waived counsel and chose to represent himself on habeas.  The term "the date the state's original brief is filed on direct appeal with the court of criminal appeals" *shall mean* the day that the State waived its right to file a brief on appeal.

*Ex Parte Perry Allen Austin*, No. 74,372 (Tex. Crim. App. May 26, 2004) (unpublished).

The new rule stated by the CCA defined new meaning for the express words of the statute, in effect, inserting new words in to the existing rule.  As emphatically stated by the panel of experts in Texas criminal procedure, this new rule had not previously been announced or anticipated in anything said by the CCA and came as a surprise to the experts.  Exhibits 1-4.

If the application of a state procedural rule is not in accordance with the parameters of the appropriate statute, that interpretation is novel and cannot bar federal merits review.   The Fourth Circuit has held that

> [b]ecause the sixty-day time limit was directly in conflict with the language of the applicable state statute at the time of the offense, and the state presented no evidence that sixty days was the time regularly imposed upon defendants convicted of capital crimes, the bar cannot be considered a 'firmly established and regularly followed state practice.'

*Keel v. French*, 162 F.3d 263, 268-69 (4th Cir. 1998).  See also *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1381(7th Cir. 1994) ("[b]ecause [the Illinois Supreme Court] has never faced the question, the Illinois Supreme Court's resolution in Del Vecchio's case was novel.")

## 4  Mr. Austin did not violate the state procedural rule as he showed good cause for his untimely filing and was defaulted only as a result of the state court's finding, flying in the face of the record, that he had "offered no explanation" for his untimely filing.

While a federal court will generally defer to the assessment of a state court as to the presence of a state-law procedural default, the federal courts have a duty to make an independent determination that the state court's reliance upon a procedural default is supportable.  *Kubat v. Thieret*, 867 F.2d 351, 366 n.11 (7th Cir. 1989) (State court's procedural default not adequate to bar federal review where application of the defaulting rule flew in the face of the record.);

*Mapes v. Coyle*, 171 F.3d 408, 429 (6th Cir. 1999) (State court's procedural basis for denying relief was not adequate to bar federal review where the state court erroneously failed to reach petitioner's claim.) *James v. Kentucky*, 466 U.S. 341 (U.S., 1984) (State court's overly technical application of its own procedural rule cannot bar federal review.)

In this case, the Texas Court of Criminal Appeals found that "Applicant has offered no explanation for his dilatory acts or why this Court should find that there is good cause to allow the filing of his application." *Ex parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004) (unpublished).

A review of the record demonstrates that this is simply not the case. In his application for a writ of habeas corpus Mr. Austin unequivocally asserted that his failure to file an application earlier was as a result of his severe mental illness and that this demonstrated good cause for the purposes of § 11.071 (4A):

> Second, during the period of time following his purported waiver of counsel up to and beyond the expiry of the filing deadline Mr. Austin has been the victim of serious mental impairment through mental illness and defect. In fact, as the allegations of this application show, Mr. Austin was not competent to stand trial or participate in his appeals through this period. In the circumstances of Mr. Austin's suicidal depression as described in this application and its attachments it is submitted that good cause is shown.

*Application for Writ of Habeas Corpus*, p.5. Mr. Austin specifically referenced the detailed account of his mental illness and evidentiary support for this contained in the body of his application. This material included findings by neuropsychiatrist, Dr. George Woods, that Mr. Austin was not competent during the period in which he waived his right to counsel and failed to file a state habeas petition and that his decisions in the this regard were not knowing, voluntary or intelligent.

The record discloses that Mr. Austin proffered good cause for his failure to timely file his

petition and supported his explanation with detailed records, witness statements and expert opinions.   The Court of Criminal Appeals' conclusion that Mr. Austin had offered *no explanation* for his personal failure to pursue his state habeas remedies is simply not supported by the record and for this reason cannot support a default of Mr. Austin's federal constitutional rights.

This case bears a striking similarity to that presented in *Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989).

In *Kubat*, the Illinois Supreme Court on post-conviction appeal held that petitioner's failure to raise on direct appeal the ineffectiveness of trial counsel's closing argument defaulted that claim. *People v. Kubat*, 114 Ill. 2d 424, 438 (Ill., 1986) ("The second issue could have been raised on direct appeal and, therefore, is deemed waived.")

Upon federal post-conviction review the District Court rejected the state's assertion of an adequate and independent state ground for denial of the petitioner's claim and found for the petitioner on the merits.   *United States ex rel. Kubat v. Thieret*, 679 F. Supp. 788 (D. Ill., 1988) The District Court held that the Illinois Supreme Court's ruling "flies in the face of the record in this case" and that "Kubat's brief on direct appeal clearly raised the issue of counsel's ineffective closing argument." *Id.* at 812 n.7.

On appeal the Seventh Circuit affirmed the district court, holding that a state procedural default that is not supported by the record cannot operate to bar a federal claim.

> The state argues that the district court erred in considering the merits of Kubat's claim that his counsel's closing argument was ineffective. The state correctly points out that on post-conviction appeal the Illinois Supreme Court ruled that Kubat had waived the claim by failing to raise it on direct appeal. The record clearly shows, however, that Kubat did in fact raise and argue the issue in his brief on direct appeal.

*Kubat v. Thieret*, 867 F.2d 351, 366 n.11 (7th Cir., 1989).  See also *Mapes v. Coyle*, 171 F.3d

408, 429 (6th Cir., 1999) (State court's procedural basis for denying relief was not adequate to bar federal review where the state court erroneously applied its procedural bar.)  *James v. Kentucky*, 466 U.S. 341 (U.S., 1984) (State court's overly technical application of its own procedural rule cannot bar federal review.)

The state court erroneously applied a rule of procedural default as a result of finding that Mr. Austin had offered no explanation for his untimely filing; a finding that flies in the face of the record.  The state court erroneously failed to consider the merits of Mr. Austin's claim of good cause as a result of this error.  In these circumstances, the state's assertion of an adequate and independent basis for the state court's denial of Mr. Austin's federal claims cannot be supported and Mr. Austin's claims should be reached on the merits in this court.

## 5   The Texas rule deeming a federal competency claim waived by the failure of a prisoner to timely raise the claim even though he is incompetent at the time of the purported waiver is unconstitutional and cannot default Mr. Austin's federal claims.

The consequence of a failure to timely file an application for a writ of habeas corpus under Texas law is that all claims available at the time of that failure are waived.

> A failure to file an application before the filing date applicable to the applicant under Subsection (a) or (b) constitutes a waiver of all grounds for relief that were available to the applicant before the last date on which an application could be timely filed, except as provided by Section 4A

Texas Code of Criminal Procedure, § 11.071 (4)(e).

It is axiomatic that "the conviction of an accused person while he is legally incompetent violates due process and that state procedures must be adequate to protect this right." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (internal citation omitted.)  It is also axiomatic that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently

"waive" his right to have the court determine his capacity to stand trial." *Id.* at 384.  Competency claims are not subject to procedural default. See Section IV.10 below.

In this case Mr. Austin explicitly raised cogent and persuasive evidence of both his incompetence at trial and his incompetence through the period allowed in Texas for the timely filing of a post-conviction petition.  This evidence established both that Mr. Austin was not competent during the period in which he waived his right to counsel and failed to file a state habeas petition and that his decisions in the this regard were not knowing, voluntary or intelligent

Nonetheless, the CCA defaulted Mr. Austin's claims without addressing either the question of Mr. Austin's competency at trial or during the appellate period or the question of the effectiveness of his purported waivers during those periods.  Instead, the court defaulted Mr. Austin's claims, relying upon Mr. Austin's conduct at the very time that he is alleged to have been incompetent.

## 6   The Texas rule on its face and as applied violates the Due Process clause of the constitution in as much as it allows an incompetent prisoner to be tried, convicted and sentenced to death and then, while still incompetent, "waive" his right to have any state or federal court remedy the fact that he was tried, convicted and sentenced to death when incompetent.

The state is seeking to rely on a rule to bar federal review when the very application of the rule prevents Mr. Austin and others like him from ever showing that their federal constitutional rights have been violated unless they are lucky enough to have their competency restored within 180 days of their waiver of appointment of habeas counsel.  Texas has created a trap for the suicidally ill prisoner that prevents them from vindicating their federal rights.

> The Court's interpretation creates a situation in which certain constitutional violations in the trial court will be rendered unreviewable.  In particular, where an incompetent defendant has been tried and sentenced to death, the decision of that incompetent

> prisoner to subsequently waive the appointment of habeas counsel
> will prevent any extra-record review of the prisoner's competency
> or the adequacy of the trial court's competency determination.

Exhibit 1, Affidavit of Charles Baird.

## 7   The rule applied to Mr. Austin is not adequate as it creates a discretion as to whether to consider or dismiss a petitioner's federal claims

A state procedural rule that allows for discretion in its application, rather than calling for mandatory dismissal of claims, is not a sufficient bar to federal review of constitutional complaints. *Williams v. Georgia*, 349 U.S. 375, 389 (1955) (A discretionary decision to deny a motion, even where such a motion will only be allowed in exceptional circumstances, cannot bar federal review.)

It is inherent in the language of Art. 11.071 § 4 & 4A that they create discretion and this is borne out by the practice of the CCA.  Art. 11.071 § 4A provides the CCA, faced with an untimely filing, with three options:

> (b) At the conclusion of the counsel's presentation to the court of criminal appeals, the court may:
> (1) find that good cause has not been shown and dismiss the application;
> (2) permit the counsel to continue representation of the applicant and establish a new filing date for the application, which may be not more than 180 days from the date the court permits the counsel to continue representation; or
> (3) appoint new counsel to represent the applicant and establish a new filing date for the application, which may be not more than 270 days after the date the court appoints new counsel.

Art. 11.071 § 4A(b)

Art. 11.071 § 4 & 4A have not been read by the CCA in such a way as to amount to "a self-denial of the power to entertain" the merits of habeas if the CCA desires to do so and as such cannot operate as a bar to federal review. *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 234 (U.S., 1969).

As much is clear from the results of the survey of the CCA's unpublished opinions and from the CCA's own published opinion in *Ex parte Kerr* (*supra*).  In the first instance, the good cause standard creates a discretion in the court but even beyond this, the effect of Art. 11.071 § 4A(b) is that the court may only dismiss an application if it finds that there was no good cause for the untimely filing.  However, even if it does find that there was no good cause the court may nevertheless reappoint counsel or appoint new counsel and set a new filing deadline.  That the court has exercised its discretion in this way in the past is clear from the survey of the CCA's unpublished opinions.  Exhibit 6. Affidavit of Eleni Antonopulos.

Further, in one of its few published opinions, *Ex parte Kerr*, 64 S.W.3d 414 (Tex. Crim. App. 2002), the CCA made it clear that it could accept untimely filings and consider them on the merits without regard to the procedures mandated by Art. 11.071 § 4A.

## 8   The rule applied to Mr. Austin is not adequate in this case because of its exorbitant application to Mr. Austin

Especially severe applications of state procedural rules lack adequacy.  According to *Delap v. Dugger*, 890 F.2d 285, 300 (11th Cir. 1989), a state rule that is applied in a "surprisingly harsh manner" cannot bar the presentation of a federal claim.

The CCA has created a new rule, which it has applied to Mr. Austin in the very case in which it was created.  It has then applied that new and surprising rule in a surprisingly harsh manner.

The evidence from the survey of CCA practice revealed: that extensions of time are liberally given; that good cause is consistently found, including on the basis of illness; that failures to timely file are often excused and the merits reached in any event; that the time clock is restarted upon the appointment of new counsel despite the lack of statutory authority for such a step, and; that the court has specifically eschewed the dismissal of initial habeas claims in *Ex*

*parte Kerr* (*supra*) in favor of a full and fair opportunity to have the claims reviewed. Despite this, the CCA has, in Mr. Austin's case, acted with the greatest severity, refusing to consider the merits of any of Mr. Austin's claims and potentially barring any other court from considering them. This in a case where a man's life is at stake.

As pointed out by Deputy Special Prosecutor, Jack Zimmerman:

> I note that both orders of the Court of Criminal Appeals are unpublished. Although they are of no authority as precedent, they effectively end the Applicant's life as far as the State courts are concerned.

Exhibit 4, Affidavit of Jack B. Zimmermann, October 5, 2004.

It is to be remembered that Mr. Austin's case is the case of a suicidally depressed man who sought out a capital charge and a death sentence in an effort to end his life and that he has never effectively been represented by counsel before a court and the state's case as to guilt or punishment has never been adversarially tested. In light of the serious questions raised and mountain of evidence provided in Mr. Austin's initial habeas petition it is harsh in the extreme to deny him any form of review for his claims and the manner in which the CCA has done this cannot act to bar federal review in the circumstances.

## 9   The rule applied to Mr. Austin is not adequate as it is manifestly unfair in treatment of his claim

State procedural rules that, when applied, have an unjust result lack the adequacy necessary for a procedural bar. In *Spencer v. Kemp*, 781 F.2d 1458, 1470-71 (11th Cir. 1986), the court found that a federal habeas claim cannot be barred by "an asserted state procedural ground that is manifestly unfair in its treatment of that claim." *See e.g.*, *Card v. Dugger* 911 F.2d 1494 (11th Cir. 1990).

The enforcement of the court's new procedural rule and the refusal to accept the presence

of good cause, particularly when viewed against the backdrop of previous CCA practice, is manifestly unfair in this case.  To bar a mentally ill prisoner from challenging the constitutional violations infecting his trial as a result of his mental illness because he did not act soon enough because of his mental illness is absurd and manifestly unjust.

In all the circumstances of this case, the operation and application of the procedural rules applied by the CCA has been so manifestly unfair in their treatment of Mr. Austin's claims that they violate Due Process and cannot bar access to federal review.

## 10 The rule applied to Mr. Austin is not adequate as it purports to waive a right that is unwaivable as a matter of federal constitutional law or where the waiver is not adequate for those purposes

A central claim in Mr. Austin's petition is a substantive competency claim.  The right not to be tried while incompetent is clearly unwaivable and federal courts will not credit a state court ruling purporting to default a claim that a defendant was incompetent to stand trial.  *Walker v. Gibson*, 228 F.3d 1217, 1229 (10th Cir. 2000), *cert. denied*, 533 U.S. 933 (2001) ("a substantive due process mental competency claim may not be procedurally barred"); *Clayton v. Gibson*, 199 F.3d 1162, 1171 n.3 (10th Cir. 1999), *cert. denied*, 531 U.S. 838 (2000) ("a substantive competency claim ... is not subject to waiver"); *Foster v. Ward*, 182 F.3d 1177, 1190 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000) (same); *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) ("A substantive competency claim is not subject to procedural bar."); *Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999), *cert. denied*, 528 U.S. 1120 (2000) (same as *Barnett v. Hargett, supra*); *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998), *cert. denied*, 528 U.S. 883 (1999) (reaffirming "this circuit's precedent" that "claim regarding competency [to stand trial] generally cannot be procedurally defaulted" unless petitioner "attempted to manipulate the appeal or post-conviction process or to abuse the writ by invoking

the competency issue in a piecemeal fashion[,] ... 'drop[ping] the issue or later pick[ing] it up as it suits his purposes' "); See also *Enriquez v. Procunier*, 752 F.2d 111, 114 (5th Cir. 1984), *cert. denied*, 471 U.S. 1126 (1985).

The CCA should have considered Mr. Austin's competency related claims but its failure to do so in no way bars this court from doing so.

Further, other of Mr. Austin's claims come within the rubric of unwaivable federal claims because they relate so fundamentally to the reliability of the fact finding process, the minimum standard of civilized procedure and contribute directly to the truth-seeking function of trials. *United States v. Mezzanatto*, 513 U.S. 196, 201, 204, 205, 206 & n.4, 209 & n.6, 210 (1995). In Mr. Austin's case these considerations incorporate the competency issues at trial and on appeal, the issue of conflicted counsel, the juror bias claims, and the claims related to state assisted suicide.

In addition, a number of the claims relate to the waiver of rights where the purported waiver of those rights is simply not adequate due to Mr. Austin's mental illness, the coercive circumstances of his confinement and the failure to ensure that Mr. Austin was fully appraised of his rights so that his waivers were knowing and intelligent as well as competent. The attacks on the validity of the purported waivers on this case are expressed in the body of the petition and those claims are referenced for these purposes.

## 11 The rule applied to Mr. Austin is not adequate because it fails to protect a legitimate state interest in the case of suicidal, mentally ill prisoners

> a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest.

*Henry v. Mississippi*, 379 U.S. 443, 447 (1965).

44

In this case, as pointed out in the pro se motion filed in William Murray's case, there is no legitimate state interest in refusing to allow a vindication of the constitutional rights of suicidal, mentally ill prisoners who become sufficiently well to seek to change the course of their self-destruction. Simple case management concerns cannot compete with the interest recognized in *Ex parte Kerr* (*supra*) that there be a full and fair opportunity to air any constitutional complaints. In any event, as demonstrated by the cases of both Mr. Austin and Mr. Murray, the state's interest in avoiding delay in the appellate process is minimal in such cases. The setting of an execution date upon issue of the CCA's mandate and the expiry of the time limit for filing in federal court both provide natural time limitations upon any delay that may be incurred by an initial waiver and later assertion of the right to habeas counsel. As in these two cases, the pace with which the case proceeds through direct appeal means that there is little or no delay in the filing of a state habeas petition when compared with cases that are more fully litigated from the outset.

## 12 The rule applied to Mr. Austin is not independent because it relied upon questions of federal law, particularly as to waiver

By determining that the time bar for filing of state habeas was triggered by the purported waiver of appointment of counsel the state has made the application of the rule applied to Mr. Austin dependent upon the antecedent application of federal law. Further, Texas law provides for an exception in the case of fundamental error to the requirement of contemporaneous objection and the requirement that error be timely raised on direct appeal. As a result, the application of these rules has been made dependent upon the antecedent application of federal law.

Intrinsic to the application of the procedural bar in this case is the competency of Mr. Austin at the time of trial (and waiver of appointment of habeas counsel) and also the adequacy

of the examination of his competency at that time. These questions implicate questions of federal law and cannot be extricated from the exercise of the procedural default in this case.

### 13 Mr. Austin's default should be excused because he is able to demonstrate cause and prejudice, particularly given his severe mental illness and the coercive conditions of his confinement, which have exacerbated that illness

Even if the state's procedural rule were to be found to be independent and adequate and Mr. Austin were found to have violated the rule, Mr. Austin can show cause for the default and prejudice as a result of the violation of his federal constitutional rights. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

At the time of the alleged defaults Mr. Austin was suffering from a severe, undiagnosed and untreated mental illness. The state, which at the time was the custodian of Mr. Austin, failed to provide a constitutional minimum standard of mental health care and instead created a prison environment whose conditions operated in violation of the Eight Amendment and directly operated to activate and exacerbate his mental illness such that he failed to seek appointment of counsel and failed to pursue his appellate or habeas rights in a timely fashion. These matters are sketched out in the petition of Mr. Austin and in the expert opinions and exhibits attached thereto but require further evidentiary development in this court. Because of the State of Texas' misconduct in its treatment of Mr. Austin he has been denied a fair opportunity to pursue his constitutional rights. In violation of Mr. Austin's rights to counsel, the State of Texas also permitted him to represent himself at trial, on appeal and during the expiry of his habeas timetable while he was incompetent; it did so in reliance upon a constitutionally ineffective examination of Mr. Austin's competence and an equally inadequate set of purported waivers of those rights.

Even if all of these matters were not the fault of the State of Texas and its agents, Mr.

Austin's mental illness represents such an exceptional circumstance that he must be regarded as faultless in his failure to appeal or file in a more timely fashion. It is to be remembered that this is a death case and in those circumstances, this court should not be slow to excuse any procedural defaults and reach the merits to ensure that substantive justice is done to both Mr. Austin and the community.

As detailed in the petition, there can be no question of prejudice having been established in this case. In the circumstances of this case none of the errors alleged could be regarded as anything other than actually fatally prejudicial to Mr. Austin's interests.

## 14 Mr. Austin's default should be excused because a failure to consider his claims will result in a fundamental miscarriage of justice

As described in the petition, Mr. Austin is actually innocent of the offense of which he has been convicted and for which he has been sentenced to death. An explanation of this innocence claim and of some of the evidence supporting it is claimed in Mr. Austin's petition. To fail to consider his claims in these circumstances would result in a fundamental miscarriage of justice and the execution of a sad, mentally ill but innocent man.

## V.    Mr. Austin requires and is entitled to a hearing and evidentiary development in relation to these exceptions to the procedural default asserted by the state

Should the State persist in its claims of procedural default given the evidence presented in this response then Mr. Austin will seek an evidentiary hearing and the opportunity to conduct evidentiary development of the matters detailed above. These matters have not been raised or litigated in state court because of the nature of the procedural posture of the case and the different federal questions now posed.

## VI.   Conclusion

Following due consideration of the above, an opportunity for evidentiary development and hearings this court should deny the state's motion to dismiss.

Respectfully submitted,

*Dick Wheelan*  pp JB

Dick Wheelan
Texas Bar No. 21252600
R. E. WHEELAN
440 Louisiana Street, Suite 900
Houston, Texas 77002
Tel.  (713) 225-1300
Counsel for Perry Austin

*Richard Bourke*  pp JB

Richard Bourke
Tx. Bar No. 24040553
Louisiana Capital Assistance Center
636 Baronne Street
New Orleans  LA  70113
Tel. (504) 558 9867
Counsel *pro hac vice* for Perry Austin

### STATEMENT REGARDING SERVICE

Because this pleading is filed ex parte, I did not serve a true and correct copy of the foregoing pleading on opposing counsel:

Margaret Schmucker
Assistant Attorney General
Office of the Attorney General
PO Box 12548, Capitol Station
Austin, TX 78711-2548
512/936-1600

48