IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PERRY ALLEN AUSTIN, § | |
| § | |
| Petitioner, § | |
| § | |
| -VS § | NO.      04-CV-2387 |
| § | |
| NATHANIEL QUATERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Institutional Division, § | |
| § | |
| Respondent. § | |

**REPLY TO THE RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO ISSUE SUBPOENAS AND TO DEPOSE WITNESSES**

Comes now Petitioner, PERRY ALLEN AUSTIN, by and through his attorney of record, Richard Bourke, and pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases, *inter alia,* presents this Reply to the Response in Opposition to Petitioner's Motion for Leave to Issue Subpoenas and To Depose Witnesses [69].

**I.**

**Introduction**

Respondent contends that the Petitioner should have no access to discovery whatsoever. But this Court has already authorized discovery, based on the sufficiency of the allegations in the Second Amended Petition for Writ of Habeas Corpus (Petition). *See* [59] Order Following Telephone Scheduling Conference Held on September 17, 2008 at 8:30 a.m..

In *Harris v. Nelson*, the U.S. Supreme Court concluded that a federal district court must provide discovery "where specific allegations before the court show reason to believe that the

1

petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969). Respondent cites this standard multiple times in its Opposition to Petitioner's Motion for Leave to Issue Subpoenas and to Depose Witnesses (Opposition) [69], but does not actually contend that Petitioner has not made the requisite allegations in his Petition.

Rather, Respondent argues that the Petitioner's specific discovery requests are overly broad, vague and redundant. Respondent cites no law in support of its claim.

In actuality, once discovery is approved, "the scope and extent of such discovery is a matter confided to the discretion of the District Court." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) Rule 6 of the Rules Governing Habeas Corpus Cases Under Section 2254 offers the only articulated standard for this determination, noting that "[a] judge may, for good cause, authorize a party to conduct discovery . . . .A party requesting discovery must provide reasons for the request." Rule 6(a), (b).   In making this determination in the present case, the Court may consider the fact that the Petitioner was unrepresented at trial and was defaulted in state post-conviction prior to any discovery.  Allowing some discovery at this point will assist Petitioner in better defining, in its response to Respondent's answer, those areas of material factual dispute that may warrant an evidentiary hearing.

Petitioner contends that he has provided reasons and good cause for his discovery requests in his original Motion for Leave to Issue Subpoenas and Depose Witnesses [63]. But in response to the Respondent's allegations that those requests are inadequate, and in an excess of caution, Petitioner herein provides additional information in relation to each request.

Respondent also argues that the Petitioner's discovery request is dilatory and that it will cause unnecessary delay. But this Court authorized discovery and set a discovery schedule in a

phone conference held on September 17, 2008. *See* [59]. Respondent did not file its answer in this case until December 19, 2008 (two years after the second amended petition was filed); the Petitioner could not before then identify the areas of factual dispute in relation to which discovery was appropriate. *See, e.g., United States v. Webster*, 392 F.3d 787, 801-802 (5th Cir. Tex. 2004); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

The request will not cause unnecessary delay. The materials will be provided in response to the subpoenas within the existing schedule. The discovery will allow Petitioner to more fully reply to and join issue with Respondent's Answer and thereby more clearly define the issues in dispute and those requiring an evidentiary hearing.

## II.

## Subpoenas Requested in Support of Mr. Austin's Claims

### A.  *Evidence of Mr. Austin's Mental Illness*

In its Answer, Respondent attempts to undermine Mr. Austin's claims of incompetency and lack of a knowing and voluntary plea and waiver by alleging the lack of any evidence of serious mental illness in the record. *See Respondent Quarterman's Answer with Brief in Support (Respondent's Answer)* [62], 28-30 (alleging the absence of any evidence of serious depression or brain damage in the record, and noting that "it appears that Austin's only mental health problem as an adult has been his sexual deviancy"); *see also* Respondent's Answer, Affidavit of Dr. Thomas Allen [62-3], 4-5 (asserting that there are no signs of severe depression in the record and that the question of whether Mr. Austin suffers from brain damage is "entirely speculative"). Conversely, Mr. Austin's own claims regarding competency are built on his contention that he suffers from major depression and organic brain impairment. *See* Petition, 75. Given this obvious factual dispute, further evidence that Mr. Austin suffers from major depression and

organic brain impairment is of unquestionable importance to Mr. Austin's competency and waiver claims. The following subpoenas all seek records containing evidence of Mr. Austin's mental illness. Notably, forensic mental health standards require the collection of all records relevant to a defendant's mental health in a case such as this.  Indeed, this is one of the points that the experts relied upon by Petitioner in his Petition advance.

1. *Mr. Austin's Military Records*

Institutional records often provide evidence of mental illness. *See, e.g.,* American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (ABA Guidelines), Guideline 10.7, Commentary ("Records—from courts, government agencies, the military, employers, etc.—can contain a wealth of mitigating evidence, documenting or providing clues to childhood abuse, retardation, brain damage, *and/or mental illness*." (emphasis added)). The United States Military is one of the few institutions with which Mr. Austin has had sustained contact in his life. ABA standards actually require death penalty counsel to obtain military records in preparation for defending a case. ABA Guideline 10.7 ("Counsel needs to explore: . . . .(4) Military service (including length and type of service, conduct, special training, combat exposure, health and mental health services)").

Mr. Austin's enlistment in the military came at a crucial, potentially illuminating time in his life – immediately before his arrest for raping his sister. Moreover, as Respondent notes, the military records already in Petitioner's possession indicate that Mr. Austin demonstrated mental health problems while he was enlisted. *See* Petition, 15.

Mr. Austin has obtained some military records via release. However, there is evidence that the record is not complete. In particular, the military records in Petitioner's possession reference specific mental health documents that were themselves not turned over to Petitioner in

4

response to his request via release.

For these reasons, Petitioner requests that this Court grant the requested discovery.

2. *Records related to Mr. Austin's sexual abuse by a G.I. housed at the Army Base in Foot Hood, Texas.*

Early sexual abuse can be both a symptom and cause of major depression. *See, e.g.,* American Psychological Association, "Understanding Child Sexual Abuse," www.apa.org/releases/sexabuse/effects.html (last visited 3/13/09) (noting connection between child and adolescent sexual abuse and depression); Marese Cheasty etal., *Relation Between Sexual Abuse in Childhood and Adult Depression: Case-Control Study, British* Medical Journal 1998; 316: 198-201 (January 17) (finding positive association between child sexual abuse and adult depression). In attempting to prove the existence of mental illness, it can be especially helpful to establish the cause of that mental illness. Indeed, counsel in death penalty cases have been found ineffective for failing to investigate abuse and other circumstances which may have contributed to adult mental illness. *See, e.g., Caro v. Woodford*, 280 F.3d 1247, 1255 (9th Cir. 2002) (counsel ineffective for failing to investigate and present evidence of client's brain damage due to prolonged pesticide exposure and repeated head injuries, and failing to present expert testimony explaining "the effects of the severe physical, emotional, and psychological abuse to which Caro was subjected as a child"), cert. denied, 536 U.S. 951 (2002); *Jermyn v. Horn*, 266 F.3d 257, 307-08 (3d Cir. 2001) (counsel ineffective for failing to investigate and present evidence of defendant's abusive childhood and "psychiatric testimony explaining how Jermyn's development was thwarted by the torture and psychological abuse he suffered as a child").

Upon information and belief, Petitioner was sexually abused as an adolescent by a serviceman stationed at Fort Hood. As Petitioner notes in his petition, without the advantage of

5

discovery and compulsory process it has not been possible to develop the facts surrounding this abuse to the extent desired. Petition, 13, nt. 33. In order to properly document this abuse, Mr. Austin must obtain any records related to the abuse and to Mr. Austin's medical treatment for a subsequent suicide attempt at the army hospital.  Respondent dismisses Petitioner's sexual abuse history as uncorroborated and then complains that Petitioner should not be permitted discovery to corroborate this claim.

For these reasons, Petitioner asks that this Court grant the requested discovery.

3. *William Austin's U.S. military records and Harumi Austin's immigration records.*

As noted above, in death penalty cases, it is counsel's duty to investigate the potential causes of the client's mental illness, including the circumstances of the client's upbringing and the parents' mental health. *See, e.g., Caro*, 280 F.3d at 1255; *Jermyn*, 266 F.3d at 307-08; *see also* ABA Guideline-10.7, Commentary ("Counsel needs to explore . . . (2) Family and social history (including physical, sexual, or emotional abuse; family history of mental illness, cognitive impairments, substance abuse, or domestic violence; poverty, familial instability, neighborhood environment, and peer influence)); ABA Guideline-10.7, Commentary, 1024-25 ("Records should be requested concerning not only the client, but also his parents, grandparents, siblings, cousins, and children. A multi-generational investigation extending as far as possible vertically and horizontally frequently discloses significant patterns of family dysfunction and may help establish or strengthen a diagnosis or underscore the hereditary nature of a particular impairment.").

Multiple affidavits attached to the Petition provide evidence of William Austin's (Perry Austin's father's) mental illness. *See* Petition, 6-7, n. 7. Mr. Austin's military records should

6

contain some evidence of the state of his mental health. Harumi Austin, Petitioner's mother, grew up in Japan. Ms. Austin's relevant records have been difficult to obtain without details such as her place of birth, which should be present in her immigration records.

As noted, Petitioner has obtained military records on himself and his father via release. However, it appears that certain documents, particularly related to mental health, were withheld.

For these reasons, Petitioner requests that this Court grant the requested discovery.

*4. Mr. Austin's TDCJ Incarceration and Parole Records*

Mr. Austin has spent a very significant portion of his life—almost thirty years—in the custody of the state, most of this at the TDCJ. Petitioner contends that during this time he has suffered from mental illness. Respondent and its experts cite to the TDCJ records currently in the record to show what they claims to be a lack of evidence of mental illness. Answer [62], 29. Mr. Austin therefore needs a full set of his TDCJ records – incarceration and parole -- in order to best support his claim that he suffers from depression and organic brain impairment, and to rebut Respondent's response.

Moreover, it was while Petitioner was on parole that Respondent alleges that he committed the crime at issue. Mr. Austin's parole records may corroborate his version of events. Respondent alleges that innocence is not a viable freestanding claim at federal habeas. Petitioner asserts that such a claim is possible, *see Herrera v. Collins*, 506 U.S. 390 (1993)[1]. It is also clear that evidence of innocence is a "gateway" through which to overcome procedural bars, *see*

---

[1] At least five Justices in Herrera supported a capital petitioner's ability to litigate a freestanding claim of innocence The Courts of Appeals have recognized that holding. *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (reviewing a freestanding claim of innocence, but finding that defendant did not meet his burden); *Cornell v. Nix*, 119 F.3d 1329, 1334 (8th Cir. 1997) (reviewing claim of innocence under Herrera, finding that standard requiring petitioner to establish his innocence is analogous to a clear and convincing standard). The Supreme Court has not, however, defined the threshold for such a claim. *See House v. Bell*, __ U.S. __, 126 S.Ct. 2064, 2087 (2006) ("whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it.").

7

*Schlup v. Delo*, 513 U.S. 298 (1995); Respondent continues to assert that the defense is procedurally barred and that the Petition should be dismissed on this basis. *See* Answer [62], 13-17. Perhaps more importantly, any corroboration of Petitioner's current account of the facts would support his theory of the original confession – that he lied in order to receive the death penalty – and thereby support Petitioner's claim that depression and organic brain impairment drove him to confess, waive counsel, plead guilty, and request the death penalty from the jury.

Mr. Austin has obtained some TDCJ records via release and open record request, and some records were introduced at trial. However, these records are incomplete. The "pen packets" introduced at trial contain only a select group of records related to particular past offenses. The records obtained by Petitioner via open record request and release are also incomplete. Petitioner has no medical files for some periods and no custodial files for other periods.

For these reasons, Petitioner requests that this Court grant the requested discovery.

5. *Records related to Mr. Austin's conditions of confinement at TDCJ*

Mr. Austin asserts in his Petition that the conditions of confinement while housed in the TDCJ were so severe as to cause him to confess to a crime that he did not commit and to render his decision to waive counsel and plead guilty involuntary. *See* Petition, 120-26. Petitioner makes many specific factual assertions regarding these conditions. Respondent alleges that Mr. Austin's claims regarding the severity of conditions are "unsupported by the facts." Answer, 34.

Mr. Austin has collected affidavits from fellow inmates to support some of his specific assertions, *see* Petition, 27, nts. 78-80., but without the power of subpoena he has been unable to factually support his allegations on all relevant points. The actual subpoena request will be tailored to support the specific contentions in Mr. Austin's petition regarding his conditions of

8

confinement.

For these reasons, Petitioner requests that this Court grant the requested discovery.

6. *TDCJ records related to Mr. Austin's aggravated assault conviction*

Affidavits from TDCJ inmates indicate that Mr. Austin's mental illness played an evident role in his actions during the violent incident that resulted in Mr. Austin's conviction. *See, e.g.,* Petition, 26, n. 73. Obviously, prior evidence of the existence of mental illness or impairment consistent with the findings detailed in the Petition and disputed by Respondent would corroborate and support Petitioners claims. Moreover, the details of the ongoing, sanctioned inter-inmate violence that were the context of this offense constitute part of the "conditions of confinement" that Petitioner contends resulted in an involuntary plea and waivers.

For these reasons, Petitioner requests that this Court grant the requested discovery.

7. *Mr. Austin's Harris County jail records*

Mr. Austin spent a significant amount of time in Harris County jail. While at Harris County Jail, Mr. Austin offered a second confession, waived trial counsel, pled guilty, represented himself at trial, and waived counsel on appeal. Petitioner contends that during this period he was suffering from mental illness, and that this mental illness rendered him incompetent to waive counsel, plea and represent himself at trial, and rendered his plea and waivers unknowing and involuntary.

Mr. Austin has obtained some Harris County jail records via waiver. However, he is missing other records from this important source of information. Mr. Austin needs a full set of his Harris County records in order to provide evidence for his claim that he suffered from

depression and organic brain impairment, which together result in his incompetency, at the time of his plea, waivers, and self-representation.

For these reasons, Petitioner requests that this Court grant the requested discovery.

*8. Mr. Austin's Dallas County jail records*

Mr. Austin spent time in Dallas County jail, prior to and during his trial for raping his sister. In relation to this charge, Mr. Austin pled not guilty by reason of insanity, and was examined by multiple doctors.  Because of this context, Petitioner the jail records from this period should contain evidence of mental illness, including evidence of Petitioner's suicide attempt during his earlier trial.  It is to be remembered that Dr. Woods' assessment of Petitioner was consistent with the earlier assessment by Dr. Lewis from the time of Petitioners custody in Dallas County jail and records from this time provide valuable corroboration of Petitioner's claims.  Petitioner has requested records via release but obtained only three pages of booking information and fingerprints.

For these reasons, Petitioner requests that this Court grant the requested discovery.

*9. Mr. Austin's letters to the District Attorney's Office and the Attorney General's Office.*

Upon information and belief, Mr. Austin has at various times written letters to the Harris County District Attorney's Office and the Attorney General's Office asserting his wish to abandon and/or resume appeals. These letters are evidence of Mr. Austin's ongoing mental illness.

For these reasons, Petitioner requests that this Court grant the requested discovery.

**B. Evidence Relevant to Other Claims**

*1. Mr. Austin's mail and visit logs at the TDCJ, Harris County and Dallas County.*

In his petition, Mr. Austin makes factual allegations regarding the frequency, timing and length of visits and mail communication with various attorneys and mental health experts, to support his competency claims and claims of ineffective assistance of counsel. In order to support these allegations, Petitioner asks to request, via subpoena, records documenting his visits and mail with counsel and with mental health experts.

*2. The TDCJ Correctional and Parole records of John Maranto.*

The correctional and parole records of John Maranto are requested to support Petitioner's present account of the circumstances of the offense. It is anticipated, for example, that Maranto's incarceration records will support Petitioner's contention that he and Maranto met in prison. Parole records are anticipated to provide evidence of Maranto's associations and criminal activity consistent with Petitioner's account of the circumstances of the offense.

As noted above, actual innocence is both a viable freestanding claim and a way to avoid procedural default. In addition, any corroboration of Mr. Austin's account of the facts supports the defense theory of the confession – that Mr. Austin lied in order to be killed via the death penalty – thus supporting Petitioner's claim that depression and brain damage drove him to waive counsel, plead guilty, and request the death penalty from the jury.

*3. The length of time any inmate has lived in TDCJ custody*

Petitioner argues that the recent change in Texas' death penalty legislation impacts his case and that an important part of this analysis is to consider whether there is or ever was a rational

11

purpose to justify Texas' alternative sentence of forty years without parole.  Petitioner asserts on information and belief that no prisoner has survived such a long time in TDCJ care and so there is no difference in retributive effect between a sentence of life without parole and life with forty years before parole eligibility.  Petitioner seeks discovery from the TDCJ to prove this assertion. This is a simple enough matter and certainly not the biggest point in the present litigation but it is a matter easily determined by discovery and such discovery will provide a clear, accurate and unambiguous factual basis upon which this court can ground its decision on the issue.

    4.  *Select transcripts from the underlying case*

These transcripts are directly relevant to Petitioner's competency and waiver claims. It was apparently at these court appearances that the trial court initially considered Petitioner's requests to waive counsel and noted its concerns regarding Petitioner's competency.  These court appearances are therefore particularly relevant to the procedural due process claim regarding the inadequacy of the procedures used to determine competency.  As they contain in at least one instance part of a colloquy with Petitioner, they are also relevant to the substantive Due Process claim.

For these reasons, Petitioner requests that this Court grant the requested discovery.

### III.

### Depositions requested in support of Mr. Austin's Claims

A.  *Depositions of William Austin (Perry Austin's Father), and Reverend Hicks*

Respondent asserts that Petitioner has provided no argument concerning how the testimony of these individuals would be relevant or why such information, if relevant, could not simply be presented in an affidavit to this court. As already established, facts regarding

Petitioner's adolescence, childhood, and William Austin's own mental health are all relevant to Mr. Austin's mental illness, and mental illness is the basis of the Petitioner's claim of incompetency and invalid waiver.

In communication with Reverend Hicks, Mr. Austin indicated why he had confessed and his inability to "take back" the confession once made. These facts are clearly supportive of Mr. Austin's competency claim.

Respondent says that affidavits are sufficient. Petitioner is content to proceed by way of affidavit, rather than deposition on the clear understanding and an order by this court that Respondent has waived any claim in respect of the admissibility of the affidavits and the loss of any opportunity by Respondent to cross-examine the witnesses should they no longer be available at the time of any evidentiary hearing.

Both men are in extremely poor health. Mr. Austin's father suffered a heart attack sometime between February 21 and 22 of this year and was on life support for a week at the Baylor Medical Center in Irving Texas. He is currently a patient at critical care rehabilitation unit in Grapevine, Texas. It is essential that their testimony be preserved. This court should direct that Petitioner may accept Respondent's waiver of cross-examination and take further affidavits responsive to Respondent's Answer or order that the witnesses be deposed as soon as possible.

Respectfully submitted,

   /s/ Richard Bourke
Richard Bourke
Tx. Bar No. 24040553
Louisiana Capital Assistance Center

636 Baronne Street
New Orleans LA 70113
Tel. (504) 558 9867
Counsel for Perry Austin

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 23rd day of March 2009, I served a true and correct copy of the foregoing pleading by electronic mail from the clerk of court for delivery on opposing counsel:

    Jeremy Greenwell
    Assistant Attorney General
    Office of the Attorney General
    PO Box 12548, Capitol Station
    Austin, TX 78711-2548
    512/936-1600

                                                                           _/s/ Richard Bourke_